Robert L. Shipley, CA State Bar No. 109420
rshipley@shipleylaw.com
Brandon S. Gray, CA State Bar No. 279881
bgray@shipleylaw.com
Robert L. Shipley, APLC
2784 Gateway Road, Suite 104
Carlsbad, California 92009
Telephone: (760) 438-5199
Facsimile: (760) 438-3706

Attorneys for Defendant:
ABC PHONES OF NORTH CAROLINA, INC., dba A WIRELESS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYLAN ITKOFF, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABC PHONES OF NORTH CAROLINA, INC., a North Carolina corporation, dba A WIRELESS; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 8:17-cv-02043-JLS-JDE<br><br>**CLASS ACTION**<br><br>**DECLARATION OF RYAN HERRICK IN SUPPORT OF DEFENDANT ABC PHONES OF NORTH CAROLINA, INC.'S MOTION TO COMPEL ARBITRATION; DISMISS CLASS ACTION ALLEGATIONS AND STAY ACTION**<br><br>*[Filed concurrently with Notice of Motion, Points and Authorities, Gray Declaration and Exhibits]*<br>Date of Hearing: October 5, 2018<br>Time of Hearing: 2:30 p.m.<br>Hon. Josephine L. Staton, Courtroom 10A<br>Complaint Filed: October 2, 2017<br>Removed: November 27, 2017<br>Trial Date: None Yet Set |

-0-

HERRICK DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION; DISMISS CLASS ACTION ALLEGATIONS; STAY
Case No. 8:17-CV-02043-JLS-JDE

I, RYAN HERRICK, hereby declare as follows:

1.  Since January 5, 2015, I have worked in the HR department for Defendant ABC Phones of North Carolina, Inc. d/b/a VICTRA ("ABC" or "Defendant"). Currently, my title is Senior HR Talent Manager. I make this Declaration in support of Defendant's Motion to Compel Arbitration, Dismiss Class Action Allegations, and Stay Action. I have personal knowledge of the facts set forth in this Declaration. If called and sworn as a witness, I could and would competently testify thereto.

2.  On or about October 1, 2016, ABC acquired another wireless telephone business called Diamond Wireless. As part of the acquisition, all of the employees of Diamond Wireless were offered employment by ABC. Former Diamond Wireless employees who accepted employment with ABC were also offered a compensation guarantee that they would earn equivalent pay to what they were making at the time they left Diamond for the first sixty (60) days of their employment with ABC.

3.  In practical terms, the compensation guarantee offered to former Diamond Wireless employees meant that they were allowed to earn commissions during the first sixty days of their employment with ABC without fulfilling the typical prerequisites normally required by ABC to earn commissions. One of the

-1-

typical prerequisites in October 2016 was completion of ABC's arbitration agreement.

4. Plaintiff Dylan Itkoff was one of the employees who was employed by Diamond Wireless and accepted a position at ABC in October 2016.

5. In 2016 and into 2017, ABC had an online system that it used to facilitate on-boarding new hires, communicating Company policies, and making training courses accessible to employees. The system was called LMS. ABC still uses a similar system, only by a different name.

6. When Plaintiff was being on-boarded as a new-hire in October 2016, the HR department provided him a unique username to be used to access LMS and ABC's intra-net (which includes an email interface and other functions).

7. Plaintiff was able to log in the first time to the LMS using only his username. At the time of the first login, the LMS system would have forced him to create a password. From that point forward, in order to log in to the LMS or the Company's intra-net, Plaintiff had to input his username and the password he created.

8. New employees, including Plaintiff, were instructed to keep their username and password confidential and secure since the LMS and the intra-net contained information unique to each employee. For example, Plaintiff's username

HERRICK DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION; DISMISS CLASS ACTION ALLEGATIONS; STAY
Case No. 8:17-CV-02043-JLS-JDE

and password protected access to his commission and sales records, his Company email address, and his payroll records, which were accessible to him through the intra-web.

9. From 2016 forward, when a new employee is on-boarded, he or she must complete a number of required "courses" using the LMS system before he or she is eligible to earn any commission on sales (commissions are a significant source of a salesperson's income).

10. Once the two-month period of guaranteed income ended for Plaintiff, he was required to complete two "courses" before he was eligible to earn commissions on sales. One was titled "The Arbitration Agreement for CA."

11. In order for Plaintiff to access and complete the course "The Arbitration Agreement for CA," he had to input his username and password in order to open the Agreement. A true and correct copy of the Arbitration Agreement that was displayed when Plaintiff completed the above referenced "course" is being filed along with ABC's Motion as **Exhibit "A"**.

12. After Plaintiff launched the Arbitration Agreement, he had to back out of that course and launch the second course, which was titled "Acknowledgement for the Arbitration Agreement for CA."

-3-

13. On the screen that appeared when the acknowledgement was launched was language stating that by clicking a button labeled "Acknowledge," Plaintiff was agreeing to the terms of the Arbitration Agreement.

14. Only after Plaintiff launched the Arbitration Agreement **and** the Acknowledgement courses were they considered completed. Plaintiff could see which courses he completed by viewing his Learning Plan, where the Arbitration Agreement and the acknowledgement would no longer appear.

15. Like Plaintiff, I also executed an arbitration agreement with ABC. I went through the same process to do so as the process described in this declaration.

16. From time to time, I have received inquiries from new employees asking about the Arbitration Agreement. I told employees who inquired that the Arbitration Agreement is a requirement at ABC and if the employee wants to earn commissions, he or she must complete it. I have never had an employee refuse to agree to it.

17. Plaintiff was no exception.

18. The LMS system recorded the date that Plaintiff completed "The Arbitration Agreement for CA" as December 7, 2016, by inputting the designation "MET." The LMS system also recorded the dates that Plaintiff completed various

other "courses." A true and correct copy of the LMS Report for Plaintiff Dylan Itkoff is being filed along with ABC's Motion as **Exhibit "B"**.

19.   There is no way for me, or anyone else, to manipulate the information the LMS uses to generate the LMS Report that shows the date Plaintiff completed "The Arbitration Agreement for California" after the system created the log associated with Plaintiff.

20.   I know that Plaintiff completed "The Arbitration Agreement for CA," because he input his Login Credentials in the LMS system, which was used for both training as well as accessing ABC's intra-web--Plaintiff had incentive to protect both functions. Moreover, Plaintiff would not have been eligible to earn commissions after early December unless he completed the agreement.

21.   The date Plaintiff completed the Arbitration Agreement makes sense to me because it was approximately sixty days after Plaintiff was initially on-boarded by ABC. Plaintiff was on-boarded in early October 2016. December 7, 2016, approximately two months later, was right around the time that the sixty-day compensation guarantee offered to Plaintiff as part of the Diamond Wireless acquisition expired. If Plaintiff wanted to continue to earn commissions, he was required to complete the Arbitration Agreement.

22. In 2016, ABC carefully tracked, and currently continues to track, whether new-hires complete the required "courses" in the LMS system, especially "The Arbitration Agreement for CA." ABC prepares and sends out reports to managers highlighting deficiencies in LMS reports and directing managers to warn employees to complete the requirements or risk their eligibility to earn commissions.

23. I have reviewed Plaintiff's payroll records, and they disclose that he earned sales commissions after December 2016 until he departed from ABC's employ (in or around late January 2017). This indicates to me Plaintiff indeed completed "The Arbitration Agreement for California." True and correct copies of Plaintiff's wage statements showing that he received commissions after December 2016 are being filed with ABC's Motion as **Exhibit "C"**.

I declare under penalty of perjury, under the laws of the United States of America and the State of California, that the foregoing is true and correct. Executed this _8_th day of August 2018, at Placerville, California

Dated August 8, 2018          By: _____
                              RYAN HERRICK
                              Senior HR Talent Manager
                              ABC PHONES OF NORTH CAROLINA, INC. dba A WIRELESS

# CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on August 9, 2018, with a copy of this document via the Court's CM/ECF systems per Local Rule CV-5-3.2.1 Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

**ROBERT L. SHIPLEY, APLC**

Dated August 9, 2018

By: /s/*Robert L. Shipley*
Robert L. Shipley
rshipley@shipleylaw.com
Brandon S. Gray
bgray@shipleylaw.com
Attorneys for Defendant
ABC PHONES OF NORTH CAROLINA, INC. dba A WIRELESS

-7-

HERRICK DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION; DISMISS CLASS ACTION ALLEGATIONS; STAY
Case No. 8:17-CV-02043-JLS-JDE